I want to ask counsel before he even introduces himself, how many Coleman versus Newsom cases have there been that get to our court? In the last three decades, is that? Yeah, exactly. I thought you were gonna say in the last three weeks, but go ahead. I wouldn't dare. Are we talking 10, 20? I would say in the realm of 10. Thank you. But don't hold me to that. No, no, no. I just want to get a ballpark, that's all. Thank you, your honor. Good morning, and may it please the court, Deputy Attorney General Randy Zak, on behalf of defendants appellants. I'd like to reserve two minutes for rebuttal, and I'll watch the clock. I'll start with why this court has jurisdiction, and then I'll move on to the merits. This court has jurisdiction under both section 1291 and section 1292, because the Order on Appeal, for the first time, made the max custody policy part of this action's Eighth Amendment remedy. Prior to the Order on Appeal, defendants had a contractual obligation to implement the max custody policy, but the Order on Appeal transformed that contractual obligation to perform custodial reviews into yet another court-ordered Eighth Amendment requirement for mental health care. That makes it both final under section 1291 and a new appealable injunction under section 1292. Let me ask you this, counsel. It seemed pretty clear to me that because the district court's order only adds the PIP max custody indicator to the preliminary list of indicators, that there would be later opportunities for appeal. Isn't that right? I don't think that's right, your honor. I think the district court's order did two things, both of which were final and both of which made the max custody policy part of this action's Eighth Amendment remedy. The first thing it did was it interpreted the stipulation from three years, now three years ago, then two years ago, to say that the word remedy in the exclusionary provision referred to this action's Eighth Amendment remedy, and therefore the max custody policy is part of this action's Eighth Amendment remedy, because the district court signed off on that stipulation. That is certainly final for a section 1291 jurisdiction, and this court held in almost exactly the same situation that it had section 1291 jurisdiction there in Asher, where there there was a settlement agreement, the district court interpreted that settlement agreement, defendants appealed, this court held it had jurisdiction under section 1291, and then reversed. Is the district court's order an injunction and following on that? Does it grant any sort of relief that was pleaded in the plaintiff's complaint? In general, the plaintiff's complaint asks for remedies to the Eighth Amendment violations, and the district court's order is an injunction, because injunctions are court orders. Previously, there was a contractual obligation to implement the max custody policy. Nobody disputes that that was signed off on by both parties and approved by the court, but the district court turned a contractual obligation into a constitutional requirement in a court order, and that makes it an injunction. Are you saying that all court orders are injunctions? No, Your Honor, but this — But why then? You know that's not true. I know, but this — I agree with you, Your Honor. This court order, however, made the max custody policy part of this action's Eighth Amendment remedy. In the PLRA's language, it made it prospective relief, because it made a new court-ordered Eighth Amendment requirement. And again, even if this court doesn't think it has jurisdiction under 1292, it certainly has jurisdiction to review the district court's erroneous interpretation under Section 1291, because in the post-judgment context, there is — that's a final order, just like it was in Asher. I mean, there are aspects of this one that may be different from the one we just argued, where just on the face of some of the orders, it seems to indicate that the proceedings on this particular issue are not necessarily complete, right? I'm looking at some of the material from the May 2023 order, right? Finalization of the list of CQIT key indicators is progressing jointly with the ongoing data remediation process and will be presented to the court for final approval once data remediation is complete. So why would you say that doesn't make this non-final? I think that also goes to Judge Smith's question, which is the district court has been very clear about this. CQIT indicators, or CQI — CQIT indicators, as you put it — You call it CQIT? CQIT. Okay. Thank you. I'm going to refer to it that way, if that's okay. CQIT indicators match the constitutional requirements in this case, the court-ordered constitutional requirements. So yes, those CQIT indicators, which are tracking constitutional requirements, some of them are going through the technical process of making sure, as a business rule, they are tracking the constitutional requirement correctly. But the district court has never suggested that once it has created a constitutional requirement and a matching CQIT indicator, it will reconsider whether those constitutional requirements are part of this action's Eighth Amendment remedy. And the order on appeal, this court doesn't even have to look at the CQIT to create the constitutional requirement. It interpreted a stipulation from two years ago to make that constitutional requirement, and that violated the PLRA, and it violated the party's agreement, the text of that agreement, which I'd like to turn to just for a second if there are no other questions about jurisdiction. The exclusionary provision, paragraph 15, was critical to the party's bargain. They told the district court that when the district court tried to delete it before it signed off on it. And why was it critical? Because it excluded the mass custody policy from the ever-growing Eighth Amendment remedy in this case. The first sentence of that stipulation said, these stipulations shall not be included in the program guide or the compendium. And those are not only the two primary remedial documents. They are the only documents that compile other court-ordered remedies. They are the documents that the court wants to put everything else in to make sure everybody keeps track of it. Second, the second sentence tried to capture everything else. It said, the stipulation sets forth the entirety of the remedy related to the issue set forth above. In other words, it was, district court, you can't touch anything to do with the stipulation because we've resolved it all. And the district court and plaintiffs interpret that singular use of remedy as referring to this action's Eighth Amendment remedy. And so in their view, the stipulation, excuse me, made the mass custody policy part of this action's Eighth Amendment remedy. Now, let me ask you this. As you know, in the other case, I know you're here to hear that, your opponent suggested that what was going on here was nothing more than case management. What's different about this particular appeal that would counter away that? Why isn't this also case management? Again, Judge Mueller, our 30 years of trying to wrestle two giant elephants, if you will, try to get them to sit down for dinner. That's just ongoing, and it's a big problem. But how is this a final thing? It's not going to be final. That means you would want something, somebody else would want something. This is a very atypical final order, if it is one. I don't think that's true at all, Your Honor. And no amount of case management can allow the district court to create a new constitutional requirement. And that's what it did when it erroneously interpreted the stipulation. It turned what was a contract into a constitutional requirement. If you look at the Seventh Circuit's case in Rasho, the Seventh Circuit there reversed for the exact same reason. It said, you violated the PLRA by turning a — by constitutionalizing a contractual agreement. And I'd like to just return for one second to the district court's erroneous interpretation of remedy. The parties knew how to refer to this action's Eighth Amendment remedy when they wanted to in the stipulation. In paragraphs 13 and 14, they referred specifically to the Eighth Amendment remedy in this case. In those paragraphs, they set forth their competing contentions. They agreed to disagree, essentially. And they said defendant's contention was — the mass custody policy was, I quote, not a necessary part of the Eighth Amendment remedy in this case. And the same point was made by plaintiffs. But then in paragraph 15, the parties used a different word. They used the generic form of the word remedy. And when two words or phrases are used in the same agreement — sorry, two different words or phrases are used in the same agreement, they must be interpreted differently. And the district court gave them the same interpretation to jam the mass custody policy into this action's Eighth Amendment remedy. That was not allowed under PLRA or the parties' agreement. And I see I've gone a little bit over the two minutes I wanted to save. Yeah, we'll put two minutes on the clock when you come back. Thank you, Your Honor. Thank you. Good morning, and may it please the Court. My name is Adrienne Herold, and I represent the Coleman plaintiffs. I'd like to start with jurisdiction and then address two points made by opposing counsel. On jurisdiction, it is our position that this court lacks subject matter jurisdiction to consider the state's challenge to the district court's March 2024 order. Whether that issue is analyzed under the Rightness Doctrine, as we present in our brief, or under a statutory basis for appellate jurisdiction, the relevant facts are the same. Here, the state is not challenging any of its substantive, ongoing obligations under the stipulation or mass custody policy. That is the state's plan for how to improve access to mental health care for mass custody patients while they're in the prison psychiatric hospitals. The order on appeal simply requires the state to track whether it is following its chosen plan as part of the state's comprehensive self-monitoring tool. That's not an appealable order. It is not a final order under Section 1291 because it clearly contemplates further proceedings. There are predefined processes to come that the court has said over and over again, including in the May 2023 order that Your Honor referenced, but also in September 2020, in December 2020, in 2021, and even in the order referring the state to bring a motion about its objections to the mass custody indicators. The stages to come include processes that will give the state ample opportunity to be heard. It includes the design and crafting of these indicators, processes around whether compliance thresholds should be attached to them, and it's still yet to be seen how the court will use these sequent monitoring reports as just part of an overall determination for whether the state has reached durable remedy. So just maybe walk through in terms of what does this order actually require, and then what specifically do you see as the next steps that will come after this data is gathered? Yes, Your Honor. So this order has set placeholders for six indicators measuring max custody. The indicators include some that just confirm yes, no, whether the state is performing timely reviews, and some that look at the percentage and number of max custody patients in the PIPs. The next step, so far the indicators have been on hold during this appeal, but if the court dismisses the appeal for lack of jurisdiction or affirms, we'll move forward to the design phase that will look like the state working with a special master to develop what the indicators actually look like, and then down the court has made clear that ultimate questions of compliance thresholds will be dealt in later court order after, I'm getting to the weeds here, but after a dispute resolution process between the parties. The orders that I've just referenced outline that there'll be a stakeholder process where we would try to reach agreement. If not, we will try to present our different positions. The special master will make a recommendation, will respond to the recommendation. The court will issue an order. All of those things are yet to come. Do you view this whole dispute before us now as basically a discovery dispute? That's certainly, that's certainly what it is at this point. It's just requiring information, and that's also why this is not an appealable injunction under section 1292 A1. It is not an injunction on its face, so the court has to turn to the three-part Carson test, and here the state hasn't satisfied any one of those three requirements. It does not have the practical effect of granting an injunction. Going back to your honor's discovery point, this does not change or modify any of the state's obligations to max custody patients. This is information gathering, but even if there was some practical effect like an injunction here, the state has not shown a serious or irreparable harm. Monitoring is not the type of harm that warrants immediate appellate review, and going back to underlying concerns here about jurisdiction, the third part of the Carson test, the state can obtain the relief it seeks in a later appeal. It retains the option to appeal if its stated fear comes to pass. If the district court says you cannot terminate this action without showing compliance, whatever compliance has been determined to be for these max custody indicators. This appeal also raises the concern of piecemeal review. Because of this order requiring tracking in the secret, especially at this preliminary stage, is immediately appealable, it risks that all post-judgment orders concerning tracking, monitoring, periodic disclosures about defendant's plans or programs would also be immediately appealable. If this court has no further questions about jurisdiction, I'll turn to two points made by opposing counsel. First, it is not correct that the PLRA is implicated here. This is not prospective relief. This is monitoring. It does not change the legal relationship to these class members, and the state continues to provide not a single case showing that monitoring is the PLRA. And to address one more point made by opposing counsel, he referred to what he calls the exclusionary provision. I believe that's section 15 of the stipulation, and misreads it. So just to take the two sentences here, the first one says, the parties agree that defendant's plan shall not be included in the program guide or compendium. No one is saying that this plan should be part of the program guide or compendium. There are many, it's well established there are many other court ordered remedial plans in this action. Examples include the staffing plan that was the basis of the contempt order recently affirmed by this court, and the order imposing minimum treatment standards in the PIPs that was affirmed by this court last year. The second sentence of this so-called exclusion exclusionary provision says, the stipulation sets forth the entirety of the remedy relating to the issues set forth above. Certainly, this stipulation sets forth the entirety of the obligations under defendant's plan to, as the stipulation is titled, treat max custody patients in the psychiatric inpatient program. The court here, the district court, did nothing to modify anything about the stipulation. And that sentence also confirmed its remedial nature here, that this plan aims to, as it expressly says, improve access to inpatient care, especially for this subpopulation that where there have been years of undisputed findings that they are among the most deprived in the Coleman class. What is your response to opposing counsel, I can't remember was this case or the other, that Judge Mueller had converted, by going backwards, had converted what was a contractual agreement into a constitutional claim? What's your response to that? Here, the stipulation has, it's clearly a court enforceable remedial plan aimed to improve access to mental health care for max custody patients in the PIPs. The court did not go backwards and create any new constitutional requirement. These are ongoing obligations that the state will have to comply with indefinitely, and the monitoring tool is simply gathering information for whether they are performing those reviews. In other words, the Eighth Amendment violation was found long ago, you're just implementing the remedy, is that right? That's correct, and here the stipulation addresses two of the Eighth Amendment violations found even in the original injunction. One, the lack of access to very necessary inpatient care for the sickest class members, and two, the overuse of custodial restrictions that lead, that at that point had led to just the segregation and supervision of our class members, whether, rather than treating them, which is still happening today for this population of max custody patients in the hospital. If this court has no further questions, we ask that you dismiss the appeal for lack of jurisdiction. Thank you. Thank you. This appeal is not about monitoring. The order below was not about monitoring. It was about interpreting a stipulation that excluded the max custody policy from this action's Eighth Amendment remedy to mean that now it is part of the Eighth Amendment remedy in this case. And just briefly, I'd like to talk about the jurisdictional argument. My counsel said, my counsel said, my colleagues said that this wasn't ripe and that this court lacked jurisdiction, but they never made that argument in their answering brief, and that's because this is ripe now. And if you look at the... We have jurisdiction to consider jurisdiction at any time, whether if somebody even doesn't raise it, right? I understand. I completely agree. And my only point here was the things that she said was necessary and going forward, none of them undermined the point I made to begin, which was now the max custody policy is part of this constitutional remedy. There may be later proceedings about what degree of compliance is necessary to end this action for the max custody policy, but that doesn't mean this isn't a constitutional requirement. And if there is an appeal, a chance to appeal now, then we will never have a chance. Defendants will never have a chance to appeal the max custody policy's inclusion in the Eighth Amendment that when it signed off on the stipulation three years ago, it made the max custody policy part of this action's remedy. And that brings me to the second point, which is that couldn't be true without violating the PLRA. Even if the district court thought it was making the max custody policy part of this action's Eighth Amendment remedy three years ago when it signed off on the stipulation, that required PLRA findings. It required a finding that the max custody policy was not only addressing an Eighth Amendment violation, but it was the minimally invasive way to do so. It was required to bring for the Eighth Amendment floor, to bring treatment up to the Eighth Amendment floor. And if I could say two more sentences, there have simply been no findings that a multilayered frequent custodial reviews are the Eighth Amendment floor. There hasn't been even a finding that one custodial review for max custody patients is necessary for Eighth Amendment mental health care. Thank you, Your Honors. We ask that you reverse. Thank you. Thank you both. This case is submitted.
judges: THOMAS, SMITH, BRESS